THORNTON et al., Appellants, v. CITY OF CLINTON.

In Banc, March 21, 1899.

1. **Cities:** TAX BILLS: FAILURE TO COLLECT: LIABILITY. Where a statute requires a city to issue special tax bills for improvement to a street, and to make them a lien against the property benefited, and the city issues such bills, and they are not paid, the city is not required to collect the tax and pay it over to the contractor, nor is it liable for the amount thereof if it issues tax bills which are valid. (Distinguishing Oster v. Jefferson City, 57 Mo. App. 485.)

2. ———: ———: STATUTE OF 1887. The statute of 1887, concerning street improvements and assessments, if not by its terms then by its plain intendment, contemplated the issuance by the city of special tax bills.

3. ———: ———: STATUTE OF 1889. The statute of 1889 provided that special tax bills issued for street improvements, shall be collectible by action in the name of the city to the use of the holder thereof, and being remedial in its nature and having an emergency clause, it governed the mode of collecting all special taxes assessed after its enactment.

4. ———: ———: ASSESSMENT. Property owners on one side of a street, can not, under the facts of this case, be made to pay for improvements to the entire width of the street.

5. ———: ———: ———: CASE STATED. The plaintiffs, under contract with the city, improved the street around the courthouse square or block, which belonged to the county. At the time the contract was executed both the plaintiff and the city supposed the county could be made to pay its share of the improvement, and the special tax bills were issued against the property fronting on the street surrounding the square, for the improvement on that side, and these were paid, but the county refused to pay the bills issued against the county's block on the other side, and this court held that it could not be compelled to pay them. Then plaintiffs induced the city to issue other tax bills against the property fronting the square, for the amount at first assessed against the county and on the refusal of the property owners to pay them, sued the city. *Held*, that the tax bills could not be legally issued, and the city could not be made to pay them.

*Appeal from Henry Circuit Court.*—HON. JAMES H. LAY, Judge.

AFFIRMED.

PEAK & BALL and J. D. LINDSAY for appellants.

(1) The law is that when a city makes a contract for public improvements, which under its charter it had authority to make, it must be held responsible for a breach of that contract on its part, although it has no power to incur a general debt for such purpose. Missouri: Fisher v. St. Louis, 44 Mo. 482; Chambers v. St. Joseph, 33 Mo. App. 536; Oster v. Jefferson City, 57 Mo. App. 485; Steffen v. St. Louis, 135 Mo. 44. Washington: Stephens v. Spokane, 39 Pac. 266; McEwin v. Spokane, 16 Wash. 212; Phila. Mrtg. Co. v. Newwhatcom, 52 Pac. 1063. Michigan: Lansing v. Von Gorder, 24 Mich. 456. Wisconsin: Miller v. Milwaukee, 14 Wis. 705; Allen v. Jonesville, 35 Wis. 403. New York: Beard v. Brooklyn, 31 Barb. 142; Weston v. Syracuse, 82 Hun. 67; McCormick v. Brooklyn, 108 N. Y. 49; Reilly

v. Albany, 112 N. Y. 30; Baldwin v. Oswego, 1 Abb. Dec. 62; Donnelly v. Brooklyn, 121 N. Y. 9. Iowa: Morgan v. Dubuque, 28 Ia. 575; Bucroft v. Council Bluffs, 63 Ia. 646; Scofield v. Council Bluffs, 68 Ia. 695. Illinois: Maher v. Chicago, 38 Ill. 273; Chicago v. People, 56 Ill. 327; Chicago v. Sexton, 115 Ill. 230; Alton v. Foster, 74 Ill. App. 511; s. c., 173 Ill. 587. Kentucky: Louisville v. Hyatt, 5 B. Mon. 199; Kentucky v. Covington, 1 Metc. (Ky.) 339; Louisville v. Leatherman, 35 S. W. 625. Kansas: Wyandotte v. Zeitz, 21 Kan. 649; Atchison v. Byrnes, 22 Kan. 65; Atchison v. Leu, 29 Pac. 467; Heather v. Garden City, 48 Pac. 841. Oregon: North Pac. L. & M. Co. v. E. Portland, 14 Ore. 3; Portland L. & M. Co. v. E. Portland, 18 Ore. 21; Little v. Portland, 26 Ore. 235; Bank v. Portland, 33 Pac. 532. New Jersey: Knapp v. Mayor, 38 N. J. L. 371. Indiana: City of Dunkirk v. Wallace, 49 N. E. 463. United States: Barber Asphalt Paving Co. v. Harrisburg, 64 Fed. 283; s. c., 12 C. C. A. 100; Barber Asphalt Pav. Co. v. Denver, 72 Fed. 336; s. c., 19 C. C. A. 139; Denny v. Spokane, 79 Fed. 719; s. c., 25 C. C. A. 164; Hitchcock v. Galveston, 96 U. S. 341; Lyon v. Dist. of Columbia, 20 D. C. 484; Dist. of Columbia v. Lyon, 161 U. S. 200. (2) The reassessments are valid, though the tax bills issued thereon are void. Butler v. Toledo, 5 Oh. St. 225; Whitley v. Common Council Lansing, 27 Mich. 131; Mills v. Charleston, 29 Wis. 400; Howell v. Buffalo, 37 N. Y. 267; Brown v. Mayor, 63 N. Y. 239; N. J. Sinking Fund Com'rs v. Linden, 40 N. J. Eq. 27. (3) Revised Statutes 1889, sections 1495, 3157 and 3158, as construed by the circuit court, are in violation of the first section of the fourteenth amendment of the Constitution of the United States, and article II, section 30, of the Constitution of Missouri, in that, so construed and applied, they deprive plaintiffs of their property without due process of law, and take the

Thornton v. City of Clinton.

same for public use, without just compensation. Clark v. Mitchell, 64 Mo. 564.

JOHN I. HINKLE, CALVIRD & LEWIS, CASEY & OWEN, JAS. PARKS & SON, and JAMES H. LAY for respondent.

(1) The city can not be held upon any implied contract. It can only be held upon a written contract within the scope of its powers, or expressly authorized by law; and the city can incur no liability originating in contract either express or implied, or sounding in tort, save on such written contract. R. S. 1889, sec. 3157; Heidelberg v. St. Francois Co., 100 Mo. 69; Johnson Co. v. Wood, 84 Mo. 489; Woolfolk v. Randolph Co., 83 Mo. 501; Taylor v. School Dist., 60 Mo. App. 372; Schell City v. Rumsey, 38 Mo. App. 264; Crutchfield v. Warrensburg, 30 Mo. App. 456. (2) One who contracts with city officers must take notice of their powers. Cheeney v. Brookfield, 60 Mo. 53; Book v. Earl, 87 Mo. 246; Keating v. Kansas City, 84 Mo. 419; Barnard v. Knox Co., 105 Mo. 382; Sturgeon v. Hampton, 88 Mo. 203; Carroll v. St. Louis, 4 Mo. App. 191. (3) The law, as found in section 32 of the Laws of 1887, page 70, as modified by the remedial act of 1889 (Acts 1889, p. 70), was the law regulating the issuance, form and substance of tax bills for macadamizing, curbing and guttering. Clinton to use v. Henry Co., 115 Mo. 557; Lovell v. Davis, 52 Mo. App. 342; State ex rel. v. Hager, 91 Mo. 452; Gager Treas. v. Prout, 48 Oh. St. 89. (4) Where the city fails to discharge its duty of collecting and paying over the special assessments for public improvements, the contractor has no remedy against the city in an action for damages, but his proper remedy is to compel, by mandamus, the officers of the city having the matter in charge to proceed with their duties as required by law. 2 Beach on Contracts, sec. 1191; Hunt v. Utica, 18 N. Y. 442; Lake v. Trustees, 4 Denio, 520. (5) Where purchaser exercised proper diligence in examining

records and found no claim or lien of any kind, existing against the property purchased, he is a *bona fide* purchaser without notice of the lien and takes his title free. Compliance with the provisions for registration of liens is a condition precedent and a strict compliance therewith is necessary to make the tax a lien on the lots. District of Columbia v. Lyons, 161 U. S. 200; Lyon v. Alley, 130 U. S. 177. (6) The city authorities had no authority under the charter to bind the city for the street improvements, but only to assess the abutting property to pay for them. Acts 1887, p. 70, sec. 31. *Expressio unius exclusio alterius* applies here. Heidelberg v. St. Francois Co., 100 Mo. 74. (7) Even if the city had possessed the power to bind itself to pay for the improvements it could have done so only in writing as required by section 3157, Revised Statutes 1889, same as Acts 1874, page 44, section 1, and following cases construing this section as prohibiting an unwritten contract: Woolfolk v. Randolph Co., 83 Mo. 501; Crutchfield v. Warrensburg, 30 Mo. App. 456; Schell City v. Rumsey, 39 Mo. App. 264; Taylor v. School District, 60 Mo. App. 374. And following cases recognizing it as prohibiting unwritten contract: Bryson v. Johnson Co., 100 Mo. 85; Saleno v. Neosho, 127 Mo. 637; Water Co. v. Aurora, 129 Mo. 578; Globe Fur Co. v. District 7, 51 Mo. App. 549. (8) The city being prohibited from contracting to pay for the street improvements out of its general revenue and never having so contracted, but having expressly provided in its ordinance that the city should not be liable, and being prohibited from paying for a service not authorized by law nor contracted for according to law the courts can not raise an implied contract to pay by the city, nor can any theory impose on the city any liability to pay. Keating v. Kansas City, 84 Mo. 415.

VALLIANT, J.—In this suit plaintiffs seek to recover of defendant, which is a city of the third class, a general

judgment for a balance due them on contracts for macadamizing, curbing and guttering certain streets which bound the courthouse square in that city.    The contracts were entered into in December, 1888, and the work was competed in August, 1889.

Upon the completion of the work the defendant city passed ordinances making special assessments against the abutting property to pay for the same, and issued to the plaintiffs special tax bills against the various lots and pieces of land fronting on the streets so improved, and included in the land so assessed and against which special tax bills issued, the courthouse square, which is the property of Henry county. These ordinances making the assessments and directing the issuance of the special tax bills, purported to thus provide for payment of the work in pursuance of the contracts, and authorized the plaintiffs to collect the bills by action in the name of the city to the use of plaintiffs.    All of these special tax bills were paid to plaintiffs except those against the courthouse square, which the county refused to pay.

Plaintiffs in the name of the city of Clinton to their use brought suit against the county on these special tax bills to enforce them against the courthouse square; the cause came to this court on appeal, and it was here decided that property owned by the county for that purpose was not subject to the special assessments, and the tax bills were not chargeable against it.    [City of Clinton to use v. Henry Co., 115 Mo. 557.]    That decision was rendered in this court May 8, 1893. On June 30 following plaintiffs petitioned the mayor and common council to make a reassessment, and to make such assessment for each block separately on all lots or pieces of ground on either side of the streets bounding the public square, except the public square itself.  On September 5 next the mayor and council not having taken the action requested, plaintiffs filed a petition in this court stating their case substantially as above, praying a writ of mandamus to compel

the mayor and council to make the reassessment as they, plaintiffs, had prayed in their petition above mentioned of June 30, that is, assessing the whole contract cost of the improvements against the private property, exempting from the burden the public square. Upon filing this petition an alternative writ of mandamus issued upon order of the chief justice in chambers. This alternative writ being served, the mayor and common council yielded obedience to it, and made the reassessment as required, and upon their return showing such obedience, the suit ended with a judgment against them for costs. In complying with the exigencies of that writ the common council passed ordinances November 7, 1893, in due form, making the reassessments and issued special tax bills delivered to the plaintiffs for the whole contract price of the work, crediting upon the tax bill against each lot, the amount that the owner had paid on the former assessment and tax bill; so that the balance for which this reassessment was made and new tax bills issued, was the sum of the former assessments and tax bills against the public square, and amounts to $8,022.32 of principal, which money has never been paid. In none of the ordinances passed was any provision made for the collection of the assessments, except declaring them a lien on the lots respectively named in the several assessments and tax bills and authorizing plaintiffs to collect them by action in the name of the city to their use.

When the first set of tax bills were issued to plaintiffs, they presented them for payment to the owners of the lots respectively and the same were paid and surrendered to the lot owners with payment in full indorsed on them, and certificate of such payment to the city clerk, who thereafter entered satisfaction of the liens on the register of liens which the ordinance required to be kept, and gave certificates accordingly. After this, and before the reassessment in November, 1893, there were numerous sales of lots embraced in the reassessment. These sales were by warranty deeds and

the parties had at the time no notice of any unsatisfied claim for improvements.

These last special tax bills have never been paid, and before the commencement of this suit the plaintiffs tendered them back to the mayor and common council and demanded of them payment of the balance of the unpaid contract price.

Upon the trial the original contracts under which the work was done were not produced, having been lost, but what purported to be copies were in evidence, offered by plaintiffs. There was testimony on the part of defendant tending to show that in each of the original contracts there was a clause in these words: "In no event is the city to be held liable for any sum whatever for work done under this contract." There was also testimony on the same part tending to show that the question of the liability of the county, or the power to tax the courthouse square, was discussed between the contractors and the city officials before the contracts were finally signed, and that the contractors took legal advice on the subject, and became satisfied that the county was liable and the public square subject to the assessment, and agreed to take the risk involved in that question, and to look to the private property on the other side of the street for its half only of the improvement, and that this fact became of public notice and was the cause of no remonstrance on the part of the property owners being filed, as might have been done under the ordinance, and the project defeated. But none of that testimony was weighed or entered into the finding of the trial court sitting as a jury; that court before deciding the case sustained plaintiffs' objection and excluded that evidence.

The written opinion of the learned judge who tried the case shows that in his mind it did not turn on those questions of fact, but on his construction of the statutes relating to the powers of the common council to bind the city by contract.

The ordinance under which the city moved in the matter is shaped under the provisions of section 31 of the Act of

March 30, 1887 (Laws 1887, p. 70), relating to cities of the third class, and directs assessments for payment of the work as in that act required, and in addition requires that the special tax bills shall issue to the contractors on the assessments, which should be a lien on the property covered, and as a penalty if not paid within thirty days of presentment and demand, should bear interest at ten per cent per annum, and if not paid in sixty days, might be collected in action in name of the city to the use of the contractors. The contracts in question conformed to the requirements of the ordinance and provided that upon the completion of the work: "The city of Clinton, Missouri, party of the first part, hereby agrees to levy by ordinance, a special tax upon the lots, blocks and pieces of ground upon the side or sides of the street or streets, avenues, alley or square along and upon which the improvements may have been made for the amount due the contractor on said contract, apportioning such amount among the several lots, blocks or pieces of ground liable thereto according to the front feet abutting on each of the streets above described, in accordance with ordinance made and provided, charging each lot and piece of ground with its proper and lawful share of the amount due on said contract, which tax bills shall be issued under the seal of the city in accordance with the ordinance made and provided in such cases, and shall be countersigned by the mayor and delivered to the said Hulsey & Thornton, contractors, upon the completion of each street in full payment for the work done."

The finding and judgment were for the defendant in the circuit court, from which, after ineffectual motion for new trial, plaintiffs filed their bill of exceptions and bring the case here for review.

I. After the defendant city in November, 1893, in obedience to the alternative writ of mandamus, passed the ordinance making the reassessment and issued the new set

of special tax bills, the Kansas City Court of Appeals decided in the case of Oster v. Jefferson City, 57 Mo. App. 485, that under the act of 1887 a city of the third class had no authority to issue special tax bills for work of this kind, but that it was its duty to make the assessments and collect them itself and pay them over to the contractor, and that if it failed to do so it was a breach of duty for which the city was liable to the contractors in a general judgment for the amount due him. Plaintiffs bottom this suit on the doctrine announced in that case.

It does not answer the plaintiffs' proposition to say that the statute points out the manner in which the city may be bound by contract, and limits its liability under a contract to such as is made in conformity to the statute, and to the extent and in the manner therein specified. The point in the plaintiffs' complaint here is, not that the defendant has failed to pay a debt or discharge a liability which it incurred directly *ex contractu*, but that the relation between the plaintiffs and the city growing out of a contract which the city had the power to make, is such that the law imposes on the city a duty to use its powers to collect a debt that is due the plaintiffs, not from the city, but from a source from which the city alone can obtain the money.

It is not strictly an action *ex contractu*, nor yet strictly an action on a tort, but it would be classed under the common law pleading as trespass on the case, it is damages for the neglect of an alleged duty, not specified in the contract, but as plaintiffs insist, is imposed by law on the defendant in consequence of its relation to the subject-matter of the contract. This is a totally different proposition from that relating to the liability of a municipal corporation for neglect of a public duty as a *quasi* government.

If the law is as the learned counsel think it is, that the city had no authority to issue tax bills, but that it was the

VOL. 148 mo—42

duty of the city, when the work was done, to assess and collect the taxes itself for the benefit of the plaintiffs, and neglected and failed to do so to the plaintiffs' damage, then the city is liable in a general judgment for the amount plaintiffs lost by the neglect of that duty, unless the plaintiffs are barred by limitations or otherwise precluded.

The case of Fisher v. St. Louis, 44 Mo. 482, is not authority for the proposition above laid down, because under the facts of that case, the city had the power to contract on its own general account, to do the work there required, that is to abate a nuisance, and it did not have the right to tax the cost of the work against the adjacent property. Nor is Kiley v. St. Joseph, 67 Mo. loc. cit. 492, regarded as in conflict with this proposition. The court there, speaking by HOUGH, J., said: "The concluding paragraph of the petition would seem to indicate that this suit was originally prosecuted upon the theory that the work done was properly chargeable to the adjacent property and that by reason of the failure of the officers of the city to assess the cost of said work, the plaintiffs' lien therefor on said property was lost, and the city thereby became liable for the value of said work. That view, however, has not been presented in argument here. The plaintiff now contends that the city had authority to order the work in question to be done, under its general power to improve the streets of the city, and that as neither the ordinance requiring the work to be done, nor the contract under which it was done, specified that it was to be paid for in special tax bills, said work constituted a claim against the city, and was not chargeable to the adjoining property." The court then addressed itself to that view of the case and the opinion must be construed in that connection. What is said about compelling the officer to perform his duty, was on a point really not in controversy. But Steffen v. St. Louis, 135 Mo. 44, is authority in support of that proposition, and many of the cases cited in the brief of plaintiffs' counsel from

other States support it, and we think it is supported also by reason and justice.

II.  But what was the duty of the city in June,. July and August, 1889, as the work was being furnished under these contracts?  The ordinance authorized by section 31 of the Act of March 30, 1887, upon which the whole of this improvement scheme was founded, provided not only for the assessments but also for the issuance of tax bills declaring them liens, providing for their registration and authorizing the contractors to collect them by action in the name of the city to their use.  The plaintiffs are chargeable with notice of this ordinance, because the statute makes it a condition precedent to the authority of the common council to enter upon such a contract, and a party dealing with the common council is bound to inquire if it is following the law.  And besides, the ordinance is referred to in the contract itself.  It was provided in the contracts that on the completion of the work called for, the city should make its assessments, and issue the tax bills "in full payment for the work done."

It is clear that both parties to the contract understood and acted on the idea that when the assessments were made and the tax bills issued, the city had done all that it was bound to do.  This understanding continued even after the adverse decision to plaintiffs in their suit against Henry county, and after the mandamus suit, and after they had by that means forced the city to issue said tax bills in November, 1893, and until the decision of the Kansas City Court of Appeals in Oster v. Jefferson City, *supra*.  Then for the first time the plaintiffs advanced the idea that it was the duty of the city to collect the tax and that its failure to do so rendered it liable.

Thus we see that by the literal terms of the contract, the city was required to issue the tax bills to plaintiff in the form prescribed by the ordinance "in full payment of the work done," and the ordinance therein referred to provided

that if the bills were not paid plaintiffs were to sue on them. in the name of the city to their own use. Even if the plaintiffs had a right to have the tax collected in a different way, they having agreed with defendant to do it in that way and defendant complying with the contract, it is difficult to see how plaintiffs could rightly complain.

The act of March 30, 1887, was the law in force at the time the contracts in question were made. Section 31 of that act directs how the assessment shall be made, that is the proportion each piece of property is to bear; then section 32 provides that the assessments "shall be known as special assessments for improvements and shall be levied and collected as a special tax, and shall be paid in the manner provided by ordinance. Said special tax may bear interest after thirty days from the date of issue and presentation, at the rate of ten per cent per annum." This section does not in so many words say that special tax bills shall issue, but some of its terms are meaningless unless we understand that tax bills are intended. Special tax bills to contractors for work of this kind were at the time nothing new in our law, but were familiar in our statutes and decisions; even another section of the same act, section 73, provides for the issuance of special tax bills. Therefore, when the statute says "said special tax may bear interest after thirty days from the date of issue and presentation," it can refer to nothing else than the issue and presentation of the tax bill. The issuance of a tax bill in such a case was assumed as a matter of course. Then what does this language in the same section mean: "The assessment . . . shall be levied and collected as a special tax, and shall be paid in the manner provided by ordinance?" The words are not used with technical accuracy. The idea is to declare the assessment a special tax to distinguish it from a general tax, and the rest of the sentence means nothing unless it means that the manner of collection is to be provided by ordinance. That is the con-

struction that the parties to this suit manifestly put on it, and that is the true construction.   The ordinance passed in pursuance of the statute did provide the manner in which the special taxes were to be collected, and the plaintiffs acquiesced in it and brought  suit as therein provided against Henry county on the tax bills issued to them under these contracts. Under the act of 1887 there was no manner for collecting the tax prescribed, but it was left to the city to provide the method by ordinance.   But the act of May 18, 1889 (Laws 1889, p. 41), in section 1, provides that such tax bills shall be collectible by action in the name of the city to the use of the holder thereof.    That act passed with an emergency clause and went into effect May 18, 1889, and was therefore in effect when the first assessments of the special taxes were made and when the first tax bills were isued to plaintiffs in June, 1889.   That section of the act of 1889 being purely remedial, governed the method of collecting the special tax. In point of fact, the mode of collecting the tax prescribed by that act was the same as that prescribed by the ordinance, but if it had been a different mode it would have governed, since it affected not the right but the remedy only.

Section 31 of the act of 1887 was carried forward into the Revised Statutes of 1889 where it was amended by expressly providing for the issuance of a special tax bill. Therefore even if the issuance of tax bills was not necessarily implied in section 31 of the act of 1887, as we hold it was, still after the Revised Statutes of 1889 went into effect that section, as amended and revised, controlled the remedy, and when the city officials in obedience to the mandamus in November, 1893, made a reassessment, they were bound to follow the law as it then was and apply the remedy as then prescribed.

We therefore hold that even if the plaintiffs were entitled to the reassessment required by the mandamus, there was no duty on the defendant to collect the taxes for them, and that

when the defendant made the assessment and issued the tax bills, it discharged its whole duty and obligation.

III.   We gather from the opinion of the court and the briefs of the counsel as reported that the trouble in the case of Oster v. Jefferson City, *supra*, began on account of the character of the tax bills issued to the contractor; two sets having been issued, and both returned as invalid, for reasons appearing on their face; the city failed to issue other tax bills in proper form and the contractor was unable to collect from the property owners.   According to that statement the city was guilty of a literal breach of the contract in failing to issue tax bills.   The court held the city liable under those circumstances and in its opinion said that the city had no authority to issue tax bills, but that it was its duty to collect the tax and pay it over to the contractor.   If we correctly gather the facts of the case, we think the city was liable, under the circumstances, but the breach of duty for which it became liable, was in failing to issue proper tax bills to the contractor, and thereby witholding from him his only means of collecting his debt.   And if the breach of duty occurred so as to give the plaintiff in that case a right of action against the city before the passage of the act of 1889, then the court rightly held that the act of 1889 did not govern the case.   But in the case at bar, the city of Clinton was guilty of no such breach of duty.   Tax bills were issued according to contract, and all of them collected by the plaintiffs except those against the courthouse square, and when it was ascertained that those were invalid, others were issued as required by the plaintiffs, so that if the plaintiffs had a right to collect the balance of their bills from the private property, the city had placed in their hands the bills upon which demand could be made and suits maintained.

But even if, as plaintiffs now contend on the authority of Oster v. Jefferson City, *supra*, a city of the third class in such case had no right to issue tax bills, but was under the

duty to collect the tax, still the defendant in this case is not liable if the proportion of the tax that was in the first instance assessed against the public square was not assessable against the lots owned by private citizens. The city is not liable for failing to collect a tax which it could not in law collect. Unless, therefore, the balance of the contract price of plaintiffs' work yet unpaid is or was assessable against the property of the individuals, the defendant has done the plaintiffs no wrong, even under plaintiffs' view of the law.

Did the plaintiffs and defendant have a right to make a contract between themselves that would render the property of citizens on one side of the street liable to assessment for the cost of improving the whole street?

It is no answer to this question to say that the contract was made in good faith and faithfully performed by the contractor, that his debt is due and that somebody ought to pay it. Nor does it satisfy the question to say that unless these lots are chargeable with it, the debt must go unpaid. The owners of these lots were not parties to that contract, the proceeding as to them is *in invitum* and their property is not affected unless it is brought within the strict meaning of the statute. The conduct of both parties showed that neither understood at the time of making the contract, that the abutting property on one side of the street was to bear the whole burden.

The ground upon which these special assessments have been upheld, is that they pay for the benefit the improvement confers. "Upon no other ground will such partial taxation for a moment stand." [Neenan v. Smith, 50 Mo. loc. cit. 529; Farrar v. St. Louis, 80 Mo. 379.]

"Taxation, whether general or special, must be uniform and must be distributed among those who are to pay it by a just ratio of apportionment . . . . . . . One rule can not be applied to one owner and a different rule for another owner."

[City of Independence v. Gates, 110 Mo. loc. cit. 382; Dillon on Mun. Corp. (4 Ed.), sec. 761.]

Bearing these principles in mind, and remembering also that this statute is in the nature of an invasion of private property, and to be strictly construed, it seems unreasonable to say that as applied to the facts of this case it means that the property on one side of the street in one block, must pay not only for the benefit it receives from the improvement and for the benefit which the property in another block on the other side of the street receives, but also to pay twice as much per foot for the same work that the property on the next block pays. There is neither equality nor uniformity in such result.

Some of the older charters which we find in looking up this subject required the assessments to be made on each lot in the proportion of its front feet to the aggregate of the front feet of all the lots on both sides of the street for the whole distance of the improvement. And under these statutes the court has held that the assessment could not be made by blocks. [Webster v. Schergens, 59 Mo. 389, and other cases there cited.] But the present statute (Laws 1887, 70), has expressly changed that; the language of the statute is "the assessment shall be made for each block separately, on all lots. and pieces of ground on either side of such street or avenue, the distance improved . . . . . . . in proportion to the front foot," so that now the law in express terms requires each block to bear its own burden. The lots that are owned by private individuals on which it is sought to impose this extra burden are in blocks separated by a street from the block owned by the county.

It is evident that the lawmakers in wording this statute either thought that the county property would be bound as other property, or, as is more probable, overlooked that point entirely, and made no provision for it. But it is most unlikely that the law would have been left as it is without an

express provision to that effect, if the legislature had intended to impose so unjust and unequal a burden on a few.

It is unjust that the county or city should have the benefit of plaintiffs' work without paying for it, but it would also be unjust to lift the burden from their shoulders and place it on those of a few individuals who are under no legal obligation to bear it, and who are under no more moral obligation in that respect than the other inhabitants of the county.

This is said in deference to the earnest appeal of the learned counsel to the court for an application of the maxim *ubi jus ibi remedium* to the condition of this case. The right there referred to is a legal right, for the impairment of which some one is responsible. In the high moral sense in which it is invoked by the counsel, that maxim expresses rather the ideal of our aspirations, than the result of our experience. As long as courts are only human, there will be many hardships for which there will be no remedy found.

The judgment of the circuit court is affirmed. SHERWOOD, BURGESS, BRACE and ROBINSON, JJ., concur; GANTT, C. J., and MARSHALL, J., not sitting.