# CITY OF ST. LOUIS v. G. H. WRIGHT CONTRACTING COMPANY, and CITY TRUST, SAFE DEPOSIT & SURETY COMPANY OF PHILADELPHIA, Appellants.

### Division One, March 28, 1907.

1. **EXPRESS TRUST: Street Improvements: Suit by City for Breach of Contract.** A city cannot, as the trustee of an express trust or otherwise, unless specially so authorized by the contract, maintain a suit, for the use and benefit of the owners. of lots abutting on a street, against the contractor and his bondsmen, for damages to the property-owners caused by a breach of the contract to improve the street. And where the contractor abandoned his contract to pave the street, and the improvement, upon a reletting thereof, cost the abutting property-owners, in the way of special taxbills, the amount sued for in excess of the gross sum fixed by the broken contract, a clause in the bond providing for a faithful performance of the contract according to its terms does not make the city the trustee of an express trust with authority in it to sue for the use and benefit of the property-owners for the additional cost of the improvement in excess of the sum fixed by the broken contract.

2. ———: ———: ———: **Third Parties: Not Named.** Even if a city and a contractor and his bondsmen could make a contract to pave a street for the use of third parties, and those parties the owners of property abutting on the street to be improved, yet where the third parties are not named in the contract, they are to be ascertained by the intention of the contract, and that intention, where the contract is in writing, is to be gathered from the writing itself; and the third parties not being named in the contract made by the city to pave a street, it must be held that the third party is the public, and not the abutting property-owners who are assessed with special taxbills to pay the cost of the improvement, for the street belongs to the public, and the improvement is for a public use, and under the Constitution the tax could not be imposed for a private way or a private use. And so, such a contract does not authorize the city to sue, for the use and benefit of the abutting property-owners, for a breach thereof, or for any additional money they have to pay for the improvement because of such breach.

3. ——: ——: ——: **Charter Provisions.** There is no express or implied authority to be found in the charter of the city of St. Louis to improve streets for the benefit of the adjoining lots, or for the benefit of their owners. Such a provision, if it existed, would be to authorize the city to exercise the taxing power for private purposes, and would therefore be invalid, because the exercise of the taxing power for that purpose is expressly prohibited by the Constitution.

4. ——: ——: ——: **Where Third Parties Are Named: Expressio Unius, etc.** The bond provided that the contractor "shall faithfully and properly perform the foregoing contract according to all the terms thereof and shall pay to the proper parties all amounts due for materials and labor used and employed in the performance thereof;" and that the bond "may be sued on at the instance of any material man, laboring man or mechanic, in the name of the city of St. Louis, to the use of such material man, laboring man, or mechanic, for any breach thereof." *Held*, that the principle of *expressio unius exclusio alterius* clearly applies, and the bond by expressly stating that the city could sue for the use of material men, laboring men and mechanics, clearly excluded the right of the city to sue for the use of abutting property-owners.

5. ——: ——: ——: **Power in City.** In the absence of any express power in a city to make contracts for indemnifying its citizens from loss due to a breach of a contract with the city for the improvement of a street, the city cannot make a contract authorizing it to maintain a suit for the use and benefit of abutting property-owners against the contractor and his bondsmen for a failure to perform the contract.

6. ——: ——: **Intended Benefit.** Whatever benefit may accrue to abutting property-owners as a result of a street improvement is purely an incident of the improvement, and not an object intentionally sought to be obtained by the contract which was made for the improvement. The primary purpose is not to enhance the value of property; that is an intended purpose, otherwise the validity of taxbills would rest exclusively upon benefits. But the enhanced value is a fund (as it were) which is first assigned to the contractor to pay the taxbills and does not become the property-owner's until he pays the taxbills. But the city owes no duty to the property-owner to increase the value of his property; if that is done, it is an incidental result.

7. ——: ——: ——: **City Agent of Property-Owners.** The fact that the city is required in letting a contract for a street improvement to let it to the lowest bidder, does not constitute it the agent of the owners of property abutting on the street to

sue for damages to them for a breach of the contract. The city does not act for them in letting the contract.

8. ———: ———: ———: ———: **Third Parties.** Where third parties have been permitted to recover upon a contract entered into for their benefit, said third parties had either adopted the contract or complied with its provisions relating to them, or the debt or duty which was owing to the third party had passed to or vested in the obligee of the contract before the suit was brought. Where the owners of property abutting on the street, for the improvement of which the city entered into contract with defendants, never adopted the contract, never performed any duty imposed by it upon them, and the city has not turned over to the defendants anything of value to the property-owners as a consideration for the contract, the city cannot sue for their use and benefit for a breach of the contract.

Appeal from St. Louis City Circuit Court.—*Hon. Horatio D. Wood,* Judge.

REVERSED.

*Seddon & Holland* and *Fidelio C. Sharp* for appellants.

(1)  The petition fails to state a cause of action in this: that the city sues as the trustee of an express trust for third persons, abutting lot-owners, for the breach of a bond entirely between the city and the defendants, to which the third persons are not parties. (a) Where an action is brought by a trustee for the benefit of third persons, they are the real parties, and the trustee has no individual interest in the action unless he is a co-beneficiary, expressly or of the same class, and then he has no greater or other interest than the other members of the class. Natl. Bk. v. Ward, 100 U. S. 195; Lewis v. Land Co., 124 Mo. 672; Rogers v. Gosnell, 58 Mo. 589; School v. Lewis, 147 Mo. 580; Crone v. Strude, 156 Mo. 262; Ammonet v. Montague, 75 Mo. 43; St. Louis v. Von Phul, 133 Mo. 561.  (b) The lot-owners not being mentioned as parties to the contract, can only become so by implication. There is

no necessary implication to bind the defendant Trust Company, which is a mere surety. Myers v. Parks, 6 Ohio St. 501; Harrisonville v. Porter, 76 Mo. 356; State v. Boon, 44 Mo. 354; State v. Johnson, 55 Mo. 80. (c) The city in making the contract was not acting as agent of the lot-owners or any third persons. Thornton v. Clinton, 148 Mo. 663; Sweeny v. Kansas, 50 Mo. App. 265; Steffen v. City, 135 Mo. 144; Heft v. Payne, 97 Cal. 108; Scott v. Springfield, 81 Mo. App. 312. (d) The city in making the contract was not acting as the trustee of an express trust for the lot-owners or others. Burton v. Larkin, 36 Kan. 246; Wright v. Terry, 23 Fla. 160; Smith v. Brown, 68 N. Y. 355; Porter v. Woods, 138 Mo. 539; Street v. Goodale, 77 Mo. App. 318; Devers v. Howard, 144 Mo. 671; State v. Loomis, 88 Mo. App. 500; Anderson v. Fitzgerald, 21 Fed. 294; Barbour v. Railroad, 49 La. Ann. 1608; Loeber v. Railroad, 41 La. Ann. 1157; City v. Westar, 35 Pa. St. 427; Emery v. Bradford, 29 Cal. 83; Himmelman v. Spargel, 39 Cal. 389; City v. Pecot, 38 Mo. 125; Howsmon v. Trenton, 79 Mo. 304; Berker v. Water Works Co., 79 Iowa 419. (2) The petition fails to state a cause of action because it does not show that any valid taxbills were ever issued or that any liens were ever created. Reed v. Bott, 100 Mo. 62; Burnham v. Boyd, 167 Mo. 185; Vieth v. Planet, 64 Mo. App. 210; St. Louis v. De Noue, 44 Mo. 137; Kansas v. Surety Co., 71 Mo. App. 315; Mallinckrodt v. Nemnich, 169 Mo. 507; North St. Louis v. Obert, 169 Mo. 507; Hoester v. Sammelman, 101 Mo. 619; Wilson v. Polk County, 112 Mo. 126. (3) The petition is defective in this: that it fails to set out the names of the third parties. In making a contract for the benefit of another, he may be either named or may be identified by description as one of a class. But this is not true of an action at law. The third party is the real plaintiff, and has a right to control the proceeding in court. The lot-owners could not have sued directly describing

themselves as "lot-owners," against Wright Construction Company. The statement of the name of the real plaintiff in an action is of the essence of the cause of action, and a failure to state his name is a failure to state a cause of action.

*Charles W. Bates* and *Benjamin H. Charles* for respondent.

(1) The law itself, *i. e.,* the charter of the city, requires the giving of a bond, not for merely nominal damages, but for a substantial thing, namely, compliance with the provisions of the contract. "No contract shall be made . . . . without a bond for its faithful performance." Chart., art. 6, sec. 27.. (2) While the power to assess the cost of a public improvement upon private property is referable to the taxing power, its foundation rests, nevertheless, in the special benefit resulting to such property from the improvement. Prior v. Construction Co., 170 Mo. 339; Meier v. St. Louis, 180 Mo. 391; Barber v. French, 158 Mo. 545, 181 U. S. 324. A special assessment is a tax on the benefit rather than on the property. Newby v. Platte Co., 25 Mo. 272; Garrett v. St. Louis, 25 Mo. 513. (3) The city, in the matter of street improvements, is, however, not hostile to the property-owner, as defendants contend. (a) "The board of public improvements, in the discharge of its duties, in reference to street improvements, is as much the agent of the property owner as of the city." Barber Asphalt Pav. Co. v. Hezel, 76 Mo. App. 152, affirmed, 155 Mo. 391. (b) It is its "duty to see to it that neither the property-owner nor the city is cheated or wronged . . . . by its lettings and contracts." Barber Asphalt Pav. Co. v. Hezel, 76 Mo. App. 152, affirmed, 155 Mo. 391; St. Louis v. Von Phul, 133 Mo. 567. (c) City officials are, with respect to street improvements, the representatives of the property-owner. Bank v. Woes-

ten, 147 Mo. 481; Barber, etc., Co. v. Hezel, 76 Mo. App. 152; St. Louis v. Von Phul, 133 Mo. 567; Bond v. Newark, 19 N. J. Eq. 383; Eno v. New York, 68 N. Y. 219; Lake v. Williamsburg, 4 Denio 523. They are "executing a statutory power of attorney from the property-owners." Louisville v. Ky. & I. Bridge Co., 70 S. W. 627. (d) The city is the trustee of an express trust. R. S. 1899, sec. 541; Snider v. Express, 77 Mo. 526; Ellis v. Harrison, 104 Mo. 277. (4) Defendants agreed with the city to perform the work. The question who was to be benefited thereby is therefore really immaterial. (a) But defendants knew the law: that property owners are presumed to be benefited; that liability on the taxbills to be issued to defendant would rest on such presumption; and that the basis for such liability is this benefit. (b) Compulsion of the law upon the property-owner, and consequent liability on the special taxbill, stand in lieu of consent to, or ratification of, the contract by him. (c) It was not essential that he should be expressly mentioned in the contract. St. Louis v. Von Phul, 133 Mo. 565; Snider v. Express Co., 77 Mo. 526. (d) The city owes him both a legal and a moral duty to enforce the contracts. St. Louis v. Von Phul, 133 Mo. 570. (e) The lot-owners are referred to in the contracts as the persons against whom the special taxbills were to be issued. (f) And, therefore, the defendants, by executing contracts containing such a provision, are estopped to raise this point. For, as one purports to bind himself, he shall be bound. (5) The basis of estoppels is fair dealing. St. Louis v. Davidson, 102 Mo. 154. See analogous cases of De Bernardi v. McElroy, 110 Mo. 657; Dair v. U. S., 16 Wall. 4. Defendants contend that they are to be held only to the strict letter of the contract; and that the obligation of sureties is not to be extended by implication or construction. To which we reply that their obligations are not to be evaded by implication and refinements of construction.

(a) If defendants were right in their contentions, they would be liable to the city only in nominal damages; although they contracted with the city for faithful performance of the entire contract. (b) This would wipe out a part of the condition of their bonds, viz.: "If the said G. H. Wright Contracting Company should faithfully and properly perform the contract . . . . according to all the terms of said contract." Such trifling with their solemn undertaking is not to be tolerated. (c) Defendants in effect admit the breach; and make no defense on the merits. (6) If contractors doing construction work for cities are not liable to the city for damages occasioned by their default, then this is probably the only sort of contract and bond known where the law furnishes no adequate remedy for the breach. Sound public policy ought not to permit such an unjust result. He who occasions an injury ought to respond in damages therefor. (7) Recovery in this suit will bar any proceedings on the bond by beneficiaries of the trust. "The city will have to settle with the *cestuis que trustent.*" Rogers v. Gosnell, 51 Mo. 469. It is only when the petition, in a suit by the city, does not state that it is brought for the beneficiaries that the suit is not a bar to further suits by them. Bethany v. Howard, 149 Mo. 504. (8) The evidence as to the issuance of special taxbills to other contractors establishes their validity in every particular. (a) These taxbills are not attacked by defendant's pleading. (b) They could not be introduced in evidence, because most of them at least had been receipted and were lost or scattered among a large number of lot-owners. (c) It was not a part of plaintiff's case to introduce them in a suit against a defaulting contractor. Proof that the subsequent contractor was paid as the former agreed to be paid, viz.: by the issuance of taxbills, was all that was necessary. (d) The measure of damages is the difference in the contract price. (e) The findings of

the referee, confirmed by the trial court, as to the issuance of the taxbills, will not be reviewed. Steffen v. St. Louis, 135 Mo. 44.

WOODSON, J.—The city of St. Louis, as trustee of an express trust, instituted this suit in the circuit court of that city against respondents, based upon twelve distinct bonds, each declared upon in a separate count of the petition, and each involving questions identical in principle. We will, therefore, notice only one count, and what is said regarding that one will apply equally well to the other eleven.

The facts of the case are, substantially, as follows:

The city of St. Louis on May 18, 1900, entered into a written contract with defendant G. H. Wright Contracting Company, whereby the latter undertook to grade and pave some streets and alleys in said city, according to certain plans and specifications on file in the office of the Board of Public Improvements, for a price therein stated, and to be paid for by special taxbills, to be issued by the city against the lots adjoining the improvements, as provided for in the city charter. The contract provided that if the contracting party abandoned the work or otherwise defaulted, the city should have the right to cancel the contract and relet the work.

The City Trust, Safe Deposit & Surety Company of Philadelphia executed the bond as surety and bound itself in a fixed penalty, conditioned that the Contracting Company should faithfully and properly perform the contract according to all the terms thereof, and should, as soon as the work was completed, pay to the proper parties all amounts due for materials and labor used and employed in the performance of the contract.

The language of the bond is as follows:

"In the event the said G. H. Wright Contracting Company shall faithfully and properly perform the

foregoing contract according to all the terms thereof, and shall, as soon as the work contemplated by contract is completed, pay to the proper parties all amounts due for materials and labor used and employed in the performance thereof; then this obligation to be void, otherwise in full force and effect, and the same may be sued on at the instance of any materialman, laboring man or mechanic in the name of the city of St. Louis, to the use of such materialman, laboring man or mechanic for any breach of the condition thereof."

The Contracting Company refused to do any work whatever under the contract, whereupon the city relet the contract to J. E. Perkinson, for the said improvements, at an advanced price of $6,500. Perkinson made the improvements according to the second contract, and the city issued special taxbills against the adjoining lots and delivered them to him in full payment for said improvements; each taxbill, of course, bore its proportional part of the $6,500, the increased cost of the improvements.

The cause was referred to a referee, and he found for the city and recommended a judgment against appellants for the said $6,500. Upon the incoming of the report appellants filed exceptions thereto, which were overruled, and thereupon they filed their motion for a new trial and in arrest, both of which being overruled by the court, they duly appealed the cause to this court.

I. The questions involved in this case are, whether or not the city of St. Louis, under the contracts and bonds mentioned, is a trustee of an express trust, for the use and benefit of the property-owners of the adjoining lots to the streets and alleys proposed to be improved by the city, and whether or not the city, by authority of and in pursuance of said contracts and bonds, can sue for and recover the damages they sus-

tained, for their use and benefit, caused by breaches thereof.

Exhaustive research by court and counsel has failed to discover where these exact questions have ever been presented to any court in this State or elsewhere. The questions seem to be of first impression in this country, and will, on that account, have to be approached and disposed of upon principle, and not from precedent.

The general rule that third parties cannot maintain an action for damages resulting from a breach of contract by one of the parties thereto, is well grounded in the jurisprudence of this State. [Roddy v. Railroad, 104 Mo. 244-5, and cases cited.]

The reason for this rule is apparent.

There is no privity of contract nor contractual relations existing between the obligee of the contract and the third parties. As such obligee he is a stranger to the others and owes them no duty; and in the absence of duty there can be no obligation. [Savings Bank v. Ward, 100 U. S. 195-200 to 207.]

As stated by this court, speaking through Judge MACFARLANE, in the case of Roddy v. Railroad, supra, "To hold that such actions could be maintained, would not only lead to endless complications, in following out cause and effect, but would restrict and embarrass the right to make contracts by burdening them with obligations and liabilities to others, which parties would not voluntarily assume."

The above rule, like most other principles of law, has its well-founded limitations and exceptions; and one of those exceptions is, that a contract between two parties based upon a valid consideration may be enforced by third parties when entered into for their benefit, and that is true though such parties are not named in the contract nor are privy to the consideration.

It is sufficient in order to create the necessary

privity that the obligee owe to the parties to be bene-
fited some obligation or duty, legal or equitable, which
would give them a just claim. [St. Louis to use v.
Von Phul, 133 Mo. l. c. 565; Ellis v. Harrison, 104 Mo.
276.]

II.　The city to maintain this suit proceeds upon
the theory that the contract entered into between it
and the appellants, whereby they obligate themselves
to pave the streets and alleys mentioned, was based
upon a valid consideration, and was made by it for the
benefit of the adjoining property-owners; that is to
say, in contemplation of law, street improvements are
beneficial to the adjoining'lots which inures to the own-
ers by virtue of their ownership.　In other words, the
city not only acts for itself in the matter of street im-
provements, but also as the legally constituted agent
of the property-owners, and in that respect the con-
tract partakes of a dual nature—first, for the benefit
of the public at large; and, second, for the benefit of
the property-owners.

There is a broad distinction between the principle
involved where a contract is entered into between two
parties for their own use and benefit, and where they
make a similar contract for the benefit of a third party.
A breach of the first would create no cause of action
in favor of a third party, even though he was thereby
deprived of large benefits which would have flown to
him had the contract been performed; while in the lat-
ter case the breach would create a cause of action in his
favor, even though the benefits he would have received
from its performance might have been insignificant as
compared to those he was deprived of by the breach of
the former. This proposition is fully supported by the
authorities cited in paragraph one of this opinion.

From what has thus been stated, it can be seen that
the character and value of the benefits and their loss
or reception have no weight whatever in determining
the question as to whether or not the contract was made

for the benefit of third parties, who in this case are the property-owners. So the primary question involved in all of this class of cases, where the third parties are not named or designated, is one of intention. And as this contract is in writing that intention must be gathered from the writings. In order to do that we have the right to consider the character of the parties to the contract, and the facts and circumstances surrounding them at the time of its execution. With that rule of construction in mind, we find a municipality, with only statutory powers, exercising governmental functions, as a subdivision of the State, entering into a contract to improve its streets and highways. If we ask ourselves the question, for whose benefit was the contract made? the answer naturally comes back, for the use and benefit of the public, because the improvement of the street, which belongs to the public, was the object sought to be obtained. On no other principle would the city have the right to tax her citizens for such improvements. It is powerless to raise funds by taxation for the construction of private ways.

Having disposed of the public branch of the question, we now come to the consideration of the branch which it is contended was intended for the benefit of the property-owners.

Under our form of government street improvements can be paid for in two ways: first, by general taxation, where the entire public pays the cost, in which case the property-owners, as such, have no concern; and, second, by special taxation, where the cost of the improvements is assessed against the adjoining lots, and in the latter case the public is not interested. But in both cases the same result is reached by two different ways or means, both of which are equally beneficial to the traveling public, and the improvements, when completed, under either mode of taxation, are just as beneficial to the adjoining property as the other. That being true, we are unable to see how the city is

acting for the individual property-owners any more in the one case than the other. In both cases the contracts for construction are for the public good and both are equally beneficial to the adjacent property-owners, and it is equally as much the duty of the city to guard the interest of the public in making paving contracts to be paid for out of the public revenues as when the cost is to be assessed against the lots. Yet we do not suppose that it would be contended that each and every individual member of the public would have a cause of action against the contractor for a breach of his contract, which necessitated a reletting of the improvements at a much higher price than that stipulated for in his contract. The principle involved in both cases is identically the same.

There is no express or implied authority to be found in the charter of the city of St. Louis to improve streets for the benefit of the adjoining lots, or for the benefit of their owners, because that would be exercising the taxing power of the city for private purposes, which is expressly prohibited by the Constitution. [Art. 10, sec. 3, Constitution of Missouri, 1875.]

The tax is imposed for public purposes in the payment of street improvements, and not for private use. As an incident only to the *public improvement* the adjoining property is benefited, and because of that benefit the tax is assessed against the property and not against its owners. It is optional with them to accept or reject the benefits after the work is completed.

What we have here expressed is not in conflict with the views stated by this court in the case of St. Louis to use v. Von Phul, 133 Mo. l. c. 565. That case was a suit brought by a materialman against the contractor and his bondsmen for materials furnished in the improvements of a street in the city of St. Louis. The bond contained, among others, the following provision:

"And shall, as soon as the work contemplated by

said contract is completed, pay to the proper parties all amounts due for material and labor used and employed in the performance thereof, then this obligation to be void, otherwise of full force and effect, and the same may be sued on at the instance of any materialman, laboring man, or mechanic, in the name of the city of St. Louis, to the use of such materialman, laboring man, or mechanic, for any breach of the condition hereof.''

This court held that the plaintiff could recover in that case, because the bond expressly provided for the payment of all materials furnished the contractor; and distinguished that case, on account of that provision in the bond, from the case of Kansas City ex rel. Blumb v. O'Connell, 99 Mo. 359.

The latter case was a suit against O'Connell and his bondsmen for personal injuries received by the alleged negligence of O'Connell while building a sewer. The bond in that case contained *this* provision:

''It is further distinctly agreed that the said party of the first part shall be responsible for all unlawful damages to persons or property, from negligence, or carelessness, in doing said work, or in not using proper precaution in doing said work, . . . . and shall indemnify the City of Kansas against all losses or claim for damages, on account of such neglect, or carelessness, . . . . and to pay all laborers employed on said work.''

In passing upon that case, this court said:

. ''Aside from the covenants a sto laborers, the object and purpose of the bond is to secure a performance of the work according to the terms of the contract, and to protect, and save harmless, the city from damages occasioned by the negligent acts of the contractor and his servants. In these respects, it is *not an agreement* with the city for the *benefit of third persons,* but for the *protection* and *benefit* of the *city.* . . . This bond must be construed as a whole, and when this is done,

aside from the covenant to pay laborers, it is *simply one of indemnity to the city.*"

The same is true and may be said of the bond in this case, as there is no material difference between the provisions of the two. In the case at bar the provision of the bond is as follows:

"In the event the said G. H. Wright Contracting Company shall faithfully and properly perform the foregoing contract according to all the terms thereof, and shall, as soon as the work contemplated by contract is completed, pay to the proper parties all amounts due for materials and labor used and employed in the performance thereof; then this obligation to be void, otherwise in full force and effect and the same may be sued on at the instance of any materialman, laboring man or mechanic, in the name of the city of St. Louis, to the use of such materialman, laboring man or mechanic, for any breach of the condition thereof."

The language of the bond clearly states what was the intention of the parties thereto. It first guarantees that G. H. Wright Contracting Company would faithfully and properly perform all the terms of the contract, and hold the city harmless for all damage it might sustain by reason of the breach thereof, and for the payment of all sums due for labor and materials performed and furnished upon the works.

The principle of *expressio unius exclusio alterius* applies with great clearness to the facts of the case. The bond not only named the third parties for whose benefit it was given, but it went further, by way of limitation, and stated what third parties could sue thereon. If the designation of the third parties who could sue on the bond did not amount to the limitation, the third parties for whose benefit the contract was made, then why name them at all, because otherwise not only those named but all others could maintain a suit if respondent is correct in its contention.

202 Sup—30

In the case of Howsmon v. Trenton Water Co., 119 Mo. 304, the water company, for a valid consideration, agreed to furnish the town and its citizens good, clear and wholesome water in sufficient quantities for fire and other purposes, and in case the company failed to supply sufficient water to extinguish fires, then it should be held for all damages occasioned by such failure.

In March, 1899, Howsmon's house was burned because the Water Company failed to supply sufficient water to extinguish the fire. He sued the Water Company for damages, and alleged the breach of the contract with the city of Trenton as the cause of his injury. And the court, in passing upon that question, used the following language:

"It is not every promise made by one to another, from the performance of which a benefit may ensue to a third party, which gives a right of action to such third person, he being neither privy to the contract nor to the consideration. The contract must be made for his benefit, as its object, and he must be the party intended to be benefited." [Citing cases.]

And, continuing, the court said:

"In other words, the rule is not so far extended as to give to the third person, who is only indirectly and incidentally benefited by the contract, a right to sue upon it. . . . . The town of Trenton had power to pass ordinances 'to prevent and extinguish fires' and, as incident thereto, power to contract for a supply of water for that purpose. But it would seem, under the authorities cited, that plaintiff cannot maintain this action for cogent reasons, which may be put in several ways:

"*First*. Although it was within the power of the town by contract to supply water to extinguish fires, it did not owe the duty of extinguishing fires to plaintiff. [Heller v. Sedalia, 53 Mo. 159.] Consequently, the case is not within the lines of adjudicated cases

which maintan the exception to the rule that suit upon a contract must be brought by a party to the contract in cases where the promisee owed a duty to the third party, which the promisor undertook to perform.

"*Second.* A municipal corporation, in making contracts for its citizens, acts for them collectively, and for all of them in every act, and the relation of privity is not, and cannot be, introduced into such contracts by reason of tax-paying or the discharge of any civil duty by any individual citizen.

"*Third.* The benefits to be conferred upon the individual citizen by the contract are incidental to the contract, the primary object of which is the benefit of all the citizens in their corporate capacity.

"*Fourth.* It does not appear that it was made for the benefit of a citizen in his individual capacity, but for the municipality, and in the absence of an express power in the municipality to make contracts for the indemnity of its individual citizens, should be so construed.

"*Fifth.* The relation that the contractor sustained to the town was that of its agent or servant to carry out the obligations of the contract upon its part for the benefit of all the citizens; for the enforcement of the terms thereof the citizens must look to the authorities of the city, and cannot individually maintain an action for a breach of the contract.

"*Sixth.* The town has no authority to make a contract to indemnify a citizen for the loss of property, . . . . and therefore could not make such a contract that would be binding upon another."

The city has no more authority in this case to make a contract to benefit the adjacent property than the town of Trenton had to indemnify a citizen for the loss of property, caused by fire. The fire protection in the one case may be as beneficial to the property-owner as street improvements might be to him in this case.

The principle of law announced in the Trenton

case is applicable to the facts of the case at bar and is decisive hereof.

III. The respondent seems to lay great stress upon its contention that the city is the legal agent of the property-owners while performing its public duties in the improvement of streets of the city.

Various phases of that question have often been before the courts of this country, and have received very careful and deliberate consideration.

All of the well-considered cases start out by the assertion of the broad proposition that the contract must be made for the *benefit of the third parties, as its object, and they must be the parties intended to be benefited* thereby. [Simson v. Brown, 68 N. Y. 355; Howsmon v. Trenton Water Co., 119 Mo. 1. c. 308.]

That being true, the question naturally presents itself, for whose benefit was the contract of improvement made in that case? We attempt to answer this particular phase of the question involved in paragraph two of this opinion by citing the Constitution, which provides that all taxation shall be for public purposes, and draw the conclusion therefrom that the object of the contract—the street improvement—was for the benefit of the city and the public at large, because it was to be paid for by taxation, which could not be done if the improvements had been for third parties, the property-owners, who were not parties to the contract. We believe the conclusion there reached was sound, but the respondent contends that while that was one of the objects, yet there was another object or purpose intended to be accomplished by it; and that was to enhance the value of the adjacent property, and thereby create or establish a fund, as it were, upon which the assessment could be levied for the payment of the taxbills, otherwise they would be void, their validity resting exclusively upon benefits. That is true, but the sole intention of the city in creating that fund was to provide a fund out of which the taxbills

could be paid, and in one breath the city created the fund, and in the next it assigned it to the contractor, and thereby prevented it from passing to and vesting in the property-owners until the improvements were completed according to the terms of the contract, and not then until they exercised their option to accept the benefits so created and actually paid for the same, and neither the city nor anyone else could exercise that option for them, except agents of their own creation.

A personal judgment against a property-owner for street improvements is void, and any statute authorizing such a judgment is unconstitutional. [Neenan v. Smith, 50 Mo. 525; St. Louis to use v. Allen, 53 Mo. 44; Carlin v. Cavender, 56 Mo. 286; Louisiana v. Miller, 66 Mo. 467; Thornton v. City of Clinton, 148 Mo. l. c. 663.]

So it seems clear to us that whatever benefits may accrue to the property-owners as a result of street improvements are purely incident to the improvement, and not an object intentionally sought to be obtained by the contract which was made for the improvements.

Third persons who are only collaterally and incidentally benefited by the terms of a contract have no cause of action for its breach. [Howsmon v. Trenton Water Co., 119 Mo. l. c. 308.]

The courts are not uniform in their opinions as to the principle upon which this class of actions are maintained. Many of them base their opinion upon the ground that the obligee in the contract owed the third party some debt or duty, either legal or equitable, and that by accepting the contract the law creates a privity of consideration between them upon which he could maintain a cause of action for its breach. [Vrooman v. Turner, 69 N. Y. 280.]

But in applying that principle to this case, we are confronted with the proposition that the city owed no duty to the property-owners to increase the value of

the property, but was merely creating a fund or providing a means out of which or by which the contemplated improvements could be paid.   To this proposition the respondent might reply, that while that may be true, yet the law required the city to let the contract at the lowest price obtainable, and that the property-owners had the right to avail themselves of that price.

In answer to that contention it may be said, that in all the cases where third parties have been permitted to recover upon a contract entered into for their benefit, said third parties had either adopted the contract or complied with the provisions thereof relating to them, or the debt or duty which was owing to the third party had passed to or vested in the obligee of the contract before the suit was instituted.   We have examined many cases and have not found a single exception to that rule.

The property-owners in this case do not fall under that rule.   They never adopted the contract, they never performed any duty imposed upon them by it, nor has the city turned over to the appellants anything of value it owed to the property-owners as a consideration for the contract between it and the appellants.

In the whole procedure for street improvements there is not an act authorized to be done by the city that has even the color of agency about it in so far as the property-owners are concerned, except that it shall let the contract for the work to be done to the lowest bidder.   But when the whole scheme of the procedure is investigated it will be seen the city does not act for, nor pretend to act for, the property-owners.

The owners of these lots were not parties to the contract.   The proceedings as to them are *in invitum,* and their property is not affected until it is brought within the *strict meaning of the statute* and even that does not affect the owner without he voluntarily accepts the benefit and pays therefor.   [Thornton v.

Clinton, 148 Mo. 648; Sweany v. Railroad, 54 Mo. App. 265.]

So in the absence of an ordinance or a contract expressly providing therefor we must hold that the defendants are not liable under the bonds sued on for the damages claimed to have been sustained by the property-owners.

IV.   Both parties to this suit have presented and discussed in their briefs several other points, but the view we have taken of the case renders it unnecessary for us to discuss them in this opinion.

The city is not asking for damages in this suit in its own behalf.

For the reasons above stated the judgment of the circuit court is reversed.

All concur.