JULIUS GLASER AND AARON WALDHEIM, EXECUTORS OF THE ESTATE OF DAVID SOMMERS, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 38381.   Promulgated December 14, 1932.

314

*Stanley S. Waite, Esq.*, for the petitioners.
*C. H. Curl, Esq.*, for the respondent.

MARQUETTE: There is little doubt that it was the wish and intention of David Sommers in 1925 to make a new will and to bequeath at least $250,000 to The Dorothy Drey Sommers Shelter Home. He died before doing so, but did leave a memorandum indicating his wishes in the matter, and those wishes were carried out by the executors and heirs at law.

Under the Revised Statutes of Missouri, every will must be in writing, signed by the testator, or at his direction, and attested to by two or more witnesses subscribing their names in the testator's presence; and a written will may be revoked only by a subsequent will in writing, or by burning, canceling, tearing or obliterating by the testator, or in his presence and by his consent and direction. It is further provided that a nuncupative will, if the estate bequeathed exceeds $200 in value, is not valid. It is clear, therefore, that the full amount of $250,000 can not be considered a valid bequest or transfer legally chargeable as such against the estate of David Sommers. Only the sum of $35,000 was bequeathed to the home by decedent's will and only that amount is deductible under the provisions of section 303 (a) (3) of the Revenue Act of 1924. Respondent has already allowed that deduction.

As an alternative, petitioners contend that the full amount of $250,000 is deductible as an enforceable claim against the estate of David Sommers. The Revenue Act of 1924, in paragraph (1) of section 303 (a), allows as deductions:

(1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages upon, or any indebtedness in respect to, property * * * to the extent that such claims, mortgages, or indebtedness were incurred or contracted *bona fide* and for a fair consideration in money or money's worth * * *.

In order to sustain their contention, petitioners must prove (1) that the claim arose from a bona fide contract made by David Sommers, and (2) a fair consideration in money or money's worth as a basis for the contract.

Upon the record the beneficiary, The Dorothy Drey Sommers Shelter Home, was not a party to any contract with the decedent, nor was there any direct pledge to the home by David Sommers that he would support it or provide by will for its support after his death. It does appear, that in 1923, at a mass meeting to raise funds for the Jewish charities in St. Louis, decedent stated that in lieu of his annual subscription of $5,000 he would pay the running expenses of the home.

Thereupon his proposition was accepted by the Federation of Jewish Charities, and his subscription was recorded not as a fixed amount, but as whatever would be sufficient to take care of the home.

About a year later decedent stated to various friends that he would provide for the home after his death.

Even if we assume that these facts disclose a binding agreement with the Federation during Sommers' life, they do not disclose any contractual obligation to be fulfilled after his death. His statements about providing for the Shelter Home in his will were made long after his agreement with the Federation of Jewish Charities, and formed no part of the consideration, if any, for that agreement. There was no legal consideration given by reason of which Sommers' statements concerning provision for the home after his death could ripen into a contract binding upon him or his estate. Clearly, therefore, the Federation of Jewish Charities had no enforceable claim against the Sommers estate.

The decedent in 1923 made another agreement affecting the home. In that agreement he promised one Ida Waldman that, if she would give up her then position and serve as matron of the home, he would provide for all the running expenses of the institution both during his life and after his death. Relying upon that promise, Mrs. Waldman became matron of the home. Assuming the binding force of Sommers' promise to her, Mrs. Waldman thereby acquired a right to recover any damages which she might suffer if Sommers broke the agreement. Having thus an adequate remedy at law for any loss sustained, Mrs. Waldman was precluded from an action for specific performance of Sommers' agreement. The extent of any enforceable claim which might have accrued to Mrs. Waldman and against the Sommers estate would have been measured solely by the amount necessary to compensate her loss caused by a breach of contract.

Petitioners claim, however, that David Sommers' agreements respecting the maintenance of The Dorothy Drey Sommers Shelter Home constituted contracts for the benefit of the home which it could enforce in its own behalf. Granting the legal principle, the facts do not sustain the contention. The record discloses only two agreements by David Sommers concerning maintenance of the home which could be considered contracts giving rise to enforceable claims against his estate. As already pointed out above, the agreement with the Federation of Jewish Charities did not extend to, nor include provision for maintaining the home after Sommers' death. Respecting the agreement with Mrs. Waldman, it is very apparent from the evidence that Sommers' promise to provide for the home after his death was not made for the benefit of charity. It is quite evident that Mrs. Waldman was not at that time particularly interested in the Shelter Home. She was interested in knowing whether, if she became matron of the home, her position would be permanent, her salary paid regularly, and the home enabled to con-

tinue. The promises by David Sommers were made solely to induce her to accept the position of matron. In so assuring her there was apparently no thought in David Sommers' mind of benefit to the home, except possibly the incidental benefit to be derived from Mrs. Waldman's services as matron. The fact that a person may derive large benefits from performance of a contract to which he was not a party, and which was made for the benefit of the principals, does not give such third party any right of enforcement of the contract. *City of St. Louis* v. *Wright Contracting Co.*, 202 Mo. 451; 101 S. W. 6. In that case the city contracted with the company for the improvement of certain streets. The company having breached its contract, suit was brought by the city upon the company's bond. The city could recover only on the theory that the contract was made for the benefit of abutting property owners. It was held that the contract was not so made, although such owner would be benefited by the improvements, the court saying:

There is a broad distinction between the principle involved where a contract is entered into between two parties for their own use and benefit, and where they make a similar contract for the benefit of a third party. A breach of the first would create no cause of action in favor of a third party even though he was thereby deprived of large benefits which would have flown to him had the contract been performed.

The above decision is directly applicable to the present proceeding. In our opinion the sum of $215,000 is not deductible from the gross estate of David Sommers as a claim against the estate within the meaning of the statute.

The next question is whether there may be deducted from the gross estate the amounts of $2,210.80 and $22,320.59, which were asserted as deficiencies for the years 1924 and 1925, respectively. The parties have agreed that there should be a deduction in the amount of $21,014.49 in respect of those deficiencies. That amount, therefore, is to be deducted in the recomputation of the tax.

Reviewed by the Board.

*Decision will be entered under Rule 50.*