CITY OF KANSAS CITY, Missouri,
Appellant-Respondent,

v.

MILREY DEVELOPMENT COMPANY,
George W. Miller, Neal O. Reyburn and
A. C. Bay, Respondents-Appellants.

Nos. WD 30894, 30905.

Missouri Court of Appeals,
Western District.

June 9, 1980.

William H. Woodson, Curtis E. Woods, Spencer, Fane, Britt & Browne, Kansas City, for respondents-appellants.

Edward W. Mullen, Deacy & Deacy, Kansas City, for appellant-respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

TURNAGE, Presiding Judge.

The City of Kansas City brought suit against Milrey Development Company and those persons who were acting as the last directors and officers of that corporation prior to its dissolution. The suit was founded upon an alleged balance due on contracts involving the installation of a sewer system for land belonging to Milrey. The individuals representing Milrey filed a counterclaim. Both parties filed a motion for summary judgment and the court sustained the motion filed by the individuals representing Milrey on the City's claim and in favor of the City on the Milrey claim.

The City has appealed from the judgment entered against it on its claim, and the Milrey individuals have appealed from the judgment in favor of the City on their counterclaim, but state they will abandon their appeal in the event the judgment in their favor on the City's claim is affirmed. Affirmed.

Milrey Development Company was incorporated in 1955 to develop 160 acres in Platte County with homes. The shareholders of the company were George Miller, Neal Reyburn and A. C. Bay. Milrey decided to have a central sewage disposal system to serve its development in order to facilitate the making of government loans to finance the purchase of the homes it was building. In July, 1958, Milrey entered into a contract with Platte County by which Milrey agreed to pay all costs involved in the construction of a sewage collection and treatment facility to serve its development, Platte Ridge. Milrey agreed to transfer the title to the completed system to the County after it had been constructed, and the County agreed to accept title and to maintain the system.

Another agreement was entered into in July, 1958, between Platte County Sewer District No. 2, Milrey, and Farley State Bank, trustee. In this agreement it was stated that Platte Ridge had been incorporated into Sewer District No. 2 and Milrey agreed to file plans and specifications for a sewage disposal system within the boundaries of Platte Ridge and to build such system. Milrey agreed to transfer ownership of the completed system to the County when it was completed and the County agreed to accept such system for operation and maintenance. Milrey agreed to make certain payments to the trustee, based on permits for homes to be built in Platte Ridge. The trustee was to pay the money it received under the agreement only on the recommendation of the County Sewer Engineer and at the direction of the County Court for the costs of constructing the sewer system. The agreement further provided that when Milrey had deposited sufficient monies with the trustee, the County Sewer Engineer would proceed to obtain the necessary right of way, advertise, and let contracts for the construction of a trunk line which would connect Platte Ridge with

a sewer system serving the drainage area within which it was located. Also, when sufficient monies had been deposited with the trustee, the County Court agreed to construct the remaining trunk sewer and the final permanently located treatment facility so that each house in Platte Ridge would be connected with a sewer system. The agreement also provided that the County could finance the trunk sewer to serve Platte Ridge and the permanent treatment facility with a bond issue or the County could elect to build a smaller disposal plant which would serve only Platte Ridge.

The agreement further provided that the County Court would make every effort to finance the construction of the sewer system and the treatment facility by one of the methods set out within a period of ten years after July 7, 1958. It was provided that if the court found prior to the expiration of the ten-year period that it was practicable within a reasonable length of time to construct the final permanently located facility together with all necessary trunk lines to serve Platte Ridge, then the County Court should notify the trustee that it was extending the time period for an additional five years.

In December, 1961, an agreement was made between Platte County Sewer Districts 1 and 2, J. A. Peterson-Park Forest, Inc., Milrey and Wells Bank, trustee. The purpose of this agreement was to provide for a joint sewer collection and treatment system to serve both Platte Ridge and Park Forest, a subdivision adjoining Platte Ridge, which was being developed by Peterson. This agreement provided for both Peterson and Milrey to pay to the trustee a $200 fee for each house built in the two subdivisions to generate sufficient funds to build a sewer system. The agreement provided that Milrey would pay 54.3% of the total cost of the permanent sewage treatment facility to serve both subdivisions and Peterson would pay 45.7%. The agreement provided that the County Court would authorize the expenditure of funds held by the trustee for the construction of the final permanently located sewer facility upon the securing of a judgment in the circuit court

declaring that the proposed main sewer district plan was a final permanently located facility as defined in the agreement of July 7, 1958. Milrey was to receive certain credits for providing a site for the treatment facility and for payments for sewer connection fees for each house theretofore paid. After the credits given to Milrey, a balance remained of about $37,000 for Milrey to pay its share of the estimated cost of the sewer system to serve both subdivisions. It was further agreed that Sewer Districts Nos. 1 and 2 would be combined into a Main Sewer District. The agreement further provided that this agreement should not alter or modify the terms of the original contracts and escrow agreements which had already been entered into by Milrey.

On April 19, 1963, Platte County Main Sewer District, which district resulted when Sewer Districts Nos. 1 and 2 were combined, entered into an agreement with the City of Kansas City entitled "Agreement of Cooperation." This agreement provided generally that the City had annexed the area served by the Main Sewer District and the District and the City agreed to cooperate to construct a sewer system that would serve not only the Platte Ridge and Park Forest subdivisions, but also the entire drainage district in which those subdivisions were located and which became a part of the City on January 1, 1962. The agreement provided the Main Sewer District would contribute to the City the funds held in escrow for the construction of the originally planned sewer system to serve the two subdivisions to help pay for the sewer system which would serve the entire drainage area. This agreement provided that the Main Sewer District would assign to the City the agreement of July 7, 1958, heretofore summarized, and the December 20, 1961, agreement, also summarized herein. The agreement provided that the agreements of 1958 and 1961 would be supplemented by new agreements between the District and Milrey in the following particulars:

(1) That the original agreements, together with the supplements, would be

declared to be assets of the District and may be assigned to the City at such time as it is shown to be necessary to carry out the provisions of the Agreement of Cooperation.

(2) That after conveyance of 7 acres of land by Milrey (as a site for a treatment facility) Milrey would owe a balance of $37,400.

(3) That Milrey was credited with 104 prepaid sewer connections and would be liable for an additional 185 connections at $200 each, or a total of $37,000, and that such connections would be utilized within 10 years after April 19, 1963, or if not utilized, Milrey would pay for all those not utilized.

The 1963 agreement was signed by the judges of the County Court of Platte County acting for the Main Sewer District and by the Director of Pollution Control for the City of Kansas City. Milrey, together with other developers, signed the following statement which was attached to the 1963 Agreement of Cooperation:

The undersigned, referred to in the foregoing Agreement of Cooperation as Developers, have carefully read and understand all of the within and foregoing provisions of said agreement, and recognizing the same is of benefit to the undersigned by providing a permanent sewer facility of greater capacity and utility, hereby consent and agree that the funds held in escrow under the contracts above referred to, or to be contributed thereunder to the District, may be employed by Platte County Main Sewer District to construct a larger plant than originally contemplated in cooperation with Kansas City, Missouri, and, in view of the provisions of the within agreement, we authorize the assignment of our contracts by the District to Kansas City at any time made.

In March, 1975, the City brought this suit against Milrey and Miller, Reyburn and Bay as the last board of directors of Milrey before its dissolution. The suit was in three counts with the first count based on the December, 1961, agreement. The petition alleged Milrey, after allowance of all credits, was still indebted in the sum of $30,662.20 for its obligations. This count alleged that by the 1963 agreement between the Main Sewer District and the City, the 1961 agreement had been assigned to the City and that Milrey was thus indebted to the City for the $30,662.20.

Count 2 was based on the April 19, 1963, agreement and alleged that Milrey had entered into an agreement with the City, the Main Sewer District, and other developers. This agreement is the same as the April 19, 1963, agreement described above, but with the allegation that Milrey was a party to this agreement. This count alleged Milrey had failed to pay $30,200 which it had agreed to pay by the 1963 agreement. This count further alleged that Milrey had agreed to pay such sum within a period of 10 years after April 19, 1963. The count alleged that by the 1963 agreement the Main Sewer District had assigned all of its rights and interests in the contracts previously entered into by Milrey to the City and that by reason of all this, Milrey was indebted to the City in the amount of $30,200. Count 3 alleged the dissolution of Milrey and the liability of Miller, Reyburn and Bay for its debts.

Following the filing of the petition and a counterclaim on behalf of Miller, Reyburn and Bay, the parties entered into a stipulation of facts. The parties agreed that the agreements described above had been entered into, including, contrary to the allegations in the City's petition, that the April 19, 1963, agreement was between Platte County Main Sewer District and the City. The stipulation disclosed that the City had issued sewer revenue bonds and the sewer system to serve the entire drainage area in which Platte Ridge and Park Forest were located had, in fact, been constructed. The stipulation stated that all escrow funds paid in by Milrey had been utilized by the Main Sewer District for the purpose of contributing to the costs of constructing the sewage system.

Following the filing of the stipulation of facts, both the City and Milrey filed mo-

tions for summary judgment. The court granted Milrey's motion and held the City's action was barred by §§ 516.100 and 516.-110, RSMo 1978, because the City's action had not been brought within 10 years after Milrey's obligation became due. The court found in favor of the City on the counterclaim. Although the court did not spell out the facts on which it found the City's claim to be barred by the 10-year limitation, it is apparent the court viewed Milrey's obligation as resting on the 1958 agreement between Sewer District No. 2, Milrey and Farley State Bank in which the County agreed to act within 10 years to finance the construction of the sewer system.

On this appeal the City contends it was entitled to recover under Count 1 based upon the December 20, 1961, agreement because such agreement provided Milrey would pay the balance due within three days after written notification by the County Court. Unfortunately the City neglects to refer to that portion of the 1961 agreement containing the 10-year limitation on the County to elect a method of financing with the possibility of a 5-year extension.

█ More fundamentally, however, Milrey points to another defect in the City's position. That is, the City contends in Count 1 that the December, 1961, agreement was assigned to it by the 1963 agreement. The 1963 agreement did not contain an assignment of any agreements to the City. As heretofore mentioned, the agreement provided that the Main Sewer District would assign the previous agreements it had with Milrey to the City, and the statement signed by Milrey attached to that agreement did contain Milrey's consent for such assignment to be made. However, there is nothing in the record to indicate an assignment was actually made by any of the sewer districts to the City. The stipulation of facts does not contain any reference to an assignment and the only other source relied upon by the City, the 1963 agreement, does not contain an actual assignment, but only an agreement to assign. "A mere agreement to assign a debt or chose in action at some future time will not operate

as an assignment thereof so as to vest any present interest in the assignee." 6A C.J.S. Assignments § 45, p. 658. Since the agreement to assign did not vest any interest in the City in the 1961 agreement, and since no actual assignment is shown to have occurred, it is apparent the City has no interest in the 1961 agreement. In *City of St. Louis v. G. H. Wright Contracting Company*, 202 Mo. 451, 101 S.W. 6 (1907) the court held that a stranger could not maintain an action for a breach of contract. This same rule was announced by this court in *Haase v. Business Men's Assurance Company*, 275 S.W.2d 381, 383[1] (Mo.App.1955). In *Haase* the court quoted from 12 Am.Jur. § 273, p. 818, that "obligations arising out of a contract are due only to those with whom it is made; a contract cannot be enforced by a person who is not a party to it or in privity with it." To the same effect is 17A C.J.S. Contracts, § 518 pp. 940–945.

█ The City's petition plainly alleges that the 1961 agreement had been assigned to it and it was bringing this suit for the enforcement of Milrey's obligation in that capacity. No other foundation for Milrey's obligation to the City was alleged in Count 1. As noted above, the facts do not support the City's allegations because they fail to show any assignment of the 1961 agreement to the City. In that situation, under the well established rules cited above, the City is not entitled to recover under the 1961 agreement. However, even if the City had shown a right to recover under this agreement, this court agrees with the trial court that the obligation of Milrey under that agreement was limited to a 10-year period as set out in the 1958 agreement, unless extended for an additional 5 years. The City's suit was not filed within 10 years after 1958, nor even in 15 years thereafter, since suit was not filed until 1975.

█ The City's second count alleged that Milrey was a party to the 1963 agreement and was obligated to the City under that agreement for its unpaid contributions. The 1963 agreement states on its face:

"This Agreement of Cooperation, made and entered into this 19th day of April,

1963, pursuant to the power and authority of Section 70.220, Revised Statutes of Missouri, 1959, as amended, by and between PLATTE COUNTY MAIN SEWER DISTRICT acting by and through the County Court of Platte County, Missouri, a political subdivision within the meaning and definition of Section 70.210, Revised Statutes of Missouri, 1959, as amended, party of the first part, (hereinafter referred to as 'District') and KANSAS CITY, a municipal corporation of the State of Missouri (hereinafter called 'City') . . . ."

No other entity or person is mentioned in the agreement as being a party thereto. It is signed only by the judges of the County Court of Platte County on behalf of the Main Sewer District and by Glen J. Hopkins, Director of Pollution Control on behalf of the City. The stipulation of facts stated that the parties to the 1963 agreement were the Main Sewer District and the City. No mention is made therein of Milrey being a party to that agreement. The only connection Milrey had with the 1963 agreement was the statement signed by it as set out above. It is significant that this statement does not refer to Milrey as a party to the agreement nor does Milrey agree to be bound by the terms of the agreement. By this statement Milrey only agreed that the funds held in escrow under the contracts previously entered into by it, the sewer districts, and trustees could be employed by the Main Sewer District to construct a larger sewer system than originally contemplated and to agree that its agreements could be assigned to the City. Thus, the status of the City in its claim under the 1963 agreement is the same as its claim under the 1961 agreement. Because Milrey was not a party to the 1963 agreement, the City may not bring an action to enforce an agreement to which Milrey was not a party. Again, the City did not plead any basis for relief against Milrey other than the fact that Milrey was a party to the 1963 agreement and agreed to pay to the City the $30,200 claimed to be unpaid. Under the rules referred to above, the City may not recover against Milrey under the 1963 agreement.

The City points to the portion of the 1963 agreement in which the Main Sewer District agrees to reach a supplemental agreement with Milrey for Milrey to pay certain sums within 10 years after 1963. There is no evidence such a supplemental agreement was ever consummated and Milrey is not bound by the 1963 agreement since it was not a party not did it agree to the terms thereof.

■ In an effort to overcome the infirmities in the City's position, just discussed, and in anticipation of those shortcomings, the City now, for the first time, urges that even if it did not show a legal assignment of the 1961 agreement it is entitled to recover under a theory of equitable assignment. That theory was not mentioned in the City's petition nor does the City now point to the facts which would support such a contention. This contention was not pleaded, nor presented to the trial court and is urged for the first time on appeal. For that reason, such contention is not before this court for review. *Vineyard v. Vineyard*, 409 S.W.2d 712, 718[6] (Mo.1966). Beyond that, the City simply contends it is entitled to recover under a theory of equitable assignment without demonstrating the facts which would show that such a theory is available to it. The principles applicable to equitable assignments are set out in 6A C.J.S. Assignments § 53, pp. 670–675. It is not the duty of this court to search the record to determine if there may be facts which would support this theory which is now advanced for the first time.

■ The City also urges for the first time that Milrey is estopped to deny the existence of an assignment or to deny liability because of the absence of a legal assignment. This theory, likewise, was not pleaded or presented to the trial court and, therefore, is not before this court. However, even if estoppel were properly preserved, the doctrine is not applicable against persons who are not parties to the contract and their privies. 31 C.J.S. Estoppel § 55, p. 363. Thus, the City would have no claim based on estoppel against Milrey because

the City and Milrey were not parties to the same agreement nor are they shown to be in privity.

The judgment in favor of Milrey, Miller, Reyburn and Bay on the City's claim is affirmed. Miller, Reyburn and Bay state in their brief that their appeal from the judgment in favor of the City on their counterclaim will be abandoned on affirmance of the judgment in their favor on the City's claim. The appeal of Miller, Reyburn and Bay on the judgment on their counterclaim is, therefore dismissed.

All concur.