**RGB2, INC., Plaintiff–Appellant**

v.

**CHESTNUT PLAZA, INC., Defendant–
Respondent.**

No. SD 29212.

Missouri Court of Appeals,
Southern District,
Division Two.

July 16, 2009.

Motion for Rehearing or Transfer to
Supreme Court Denied Aug. 6, 2009.

Application for Transfer Denied
Oct. 6, 2009.

Thomas W. Millington, Millington, Glass & Love, Springfield, MO, for Appellant.

John D. Compton, Richard K. Wilson, Whiteaker & Wilson, Springfield, MO, for Respondent.

JOHN E. PARRISH, Judge.

RGB2, Inc., (plaintiff) appeals a judgment for Chestnut Plaza, Inc., (defendant) in an action plaintiff brought for "[b]reach of [c]ontract" (Count I) and "[b]reach of [g]ood [f]aith and [f]air [d]ealing" (Count II).[1] This court affirms.

This case arose from a real estate transaction between defendant and Cherokee Investments, Inc. (Cherokee). Cherokee and defendant entered into a contract apparently in July 1991, for the sale and purchase of certain real estate owned by defendant in Springfield, Greene County, Missouri.[2] The contract originally specified the property that was being sold as "Lot # 2, Chestnut Plaza, Inc.," and in a "Special Agreements Addendum" as "Lot 2, Chestnut Plaza, Phase I, Spfd, Mo." A subsequent addendum states, "The lot being purchases [sic] is to be changed from lot # 2 to lot # 3."

Ron Ward owned a franchise for a Hardee's restaurant. He also owned all the stock in Cherokee prior to its entering into the contract that is now before this court. Paragraph 4.4 of the contract states:

> SELLER covenants to deliver to BUYER on the Closing Date, a restrictive covenant, in recordable form, restricting SELLER'S property and, if SELLER is a corporation, the property of SELLER'S officers, directors, subsid-

---

1. This case was before this court previously. *See RGB2, Inc. v. Chestnut Plaza, Inc.,* 103 S.W.3d 420 (Mo.App.2003). The observation was made at that time that "[n]o explanation was provided as to why [Count II] was denominated differently from the basic allegations of the breach of contract claim designated 'Count I'"; that "Missouri law implies a covenant of good faith and fair dealing in every contract." *Id.* at 422 n. 1. Albeit that the judgment that is now on appeal found for defendant "on all counts and claims in Plaintiff's First Amended Petition," this court again notes that no explanation appears as to why a separate count in an action for breach of contract was set out separately and denominated "Breach of Good Faith and Fair Dealing."

2. The record before this court is replete with examples of lack of attention to detail by the parties to the contract that is in question. The contract, which is a printed form, is not dated, although its paragraph 14 states that unless the seller specified in the contract executes the document, the offer evidenced by the document "shall expire at midnight E.D.T. on: *July 17, 1991*." Other omissions include identification of the "SELLER" in the preamble of the contract as "OWNERS OF RECORD." The agreement was executed on behalf of defendant as "Seller." Ron Ward, a "50 percent" owner of plaintiff who had been involved in the initial purchase of the property that is the subject of the dispute in this case, was asked when the contract was executed. His answer was that he did not know; that he "believe[d] it was 1991," but he did not recall a specific date.

iaries, and affiliates, within a two thousand (2000) foot radius of the Premises from use by any type of restaurant primarily engaged in the sale of *primarily* [[3]] hamburgers.[[4]] Said restrictive covenant shall run for a period of twenty (20) years from the Closing Date. (*See EXHIBIT A*) [[5]]

Exhibit A to the contract includes various changes and explanations. Two of the statements on Exhibit A relate to the restriction which paragraph 4.4 provides. They state:

> As pertaining to 4.4 on page 2, the restrictions shall be for restaurants of a fast food nature. This is not meant to preclude any full service, sit down type of restaurant.
>
> . . .
>
> Food restrictions are to exclude any fast food restaurant selling hamburgers, breakfast buscuits [sic], tacos, hot dogs or anything directly in competition to Hardee's. This does not exclude any major sit-down type of full service restaurant.

Defendant conveyed Lot 3 of Chestnut Plaza Phase I to Cherokee by warranty deed dated February 28, 1992. The deed was recorded in the deed records of Greene County, Missouri, March 2, 1992. No restrictive covenant directed to the remaining property within Chestnut Plaza Phase I was delivered to Cherokee. Cherokee conveyed Lot 3 of Chestnut Plaza Phase I to plaintiff by warranty deed dated May 4, 1992.[6] The deed was recorded May 6, 1992, and re-recorded June 3, 1992.[7]

Mr. Ward explained that he had been the sole shareholder of Cherokee. He stated that Cherokee did not have sufficient funds to "complete the deal" of constructing a Hardee's restaurant as was his wish; that plaintiff was formed in order to obtain money from other investors who became shareholders in plaintiff.[8] The Hardee's restaurant opened for business in 1992.

In September 1997, a McDonald's restaurant located on Lot 2 of Chestnut Plaza Phase I opened for business.[9] It was within 2000 feet of Lot 3 on which the Hardee's restaurant is situated.

Plaintiff brought this action in November 1997. A First Amended Petition, the

---

3. The word "primarily" is handwritten into the form contract. Italics are used to reflect that the word is handwritten.

4. The following words were also part of the printed part of the form contract but were lined out: "hot dogs, roast beef sandwiches, chicken products, biscuits, ice cream or other products similar to those sold in HARDEE'S Restaurants as the same may change from time to time."

5. "(See EXHIBIT A)" is handwritten in the form contract.

6. The trial court found that Cherokee ceased doing business in 2002. Its corporate status was administratively dissolved by the Secretary of State.

7. The warranty deed was re-recorded because it did not have Cherokee's corporate secretary's attestation when originally delivered.

The second recording occurred after the attestation was added.

8. Mr. Ward told the trial court, "Cherokee Investments did not have the money to complete the deal. The financial community had kind of changed during that time, and we could no longer get the bank loan; so to preserve the deal, the builder who was going to build the place and some friends of his in Kansas City furnished the—their names and formed a corporation to get the money to build the restaurant and—and close the deal on the land. They—I—I had to come up with the rest of the money on the land."

9. Plaintiff had previously sought to enjoin the construction and operation of the McDonald's restaurant. The injunction was not granted.

petition on which the case was tried, was filed August 8, 2003. It sought money damages for breach of contract contending that "Defendant breached and continues to breach its agreement with Plaintiff in that it did not deliver to Plaintiff on the Closing Date, a restrictive covenant, in recordable form restricting Defendant's property as stated in paragraph 4.4 of the Real Estate Purchase Contract, the Special Agreements Addendum and the Change Addendum." The trial court entered Findings of Fact and Conclusions of Law and Judgment for defendant and against plaintiff.

The trial court's conclusions of law include:

. . .

4. The statute of limitations began to run on February 28, 1992, at the time of closing, when [Cherokee] did not receive delivery of a restrictive covenant since [Cherokee] had, at that time, a right to prosecute its claim for breach of contract for failure to deliver a restrictive covenant at closing and for specific performance thereof to a successful conclusion.

. . .

7. The statute of limitations on Plaintiff's cause of action had expired at the time Plaintiff first filed suit in this matter on November 12, 1997. Plaintiff's cause of action is barred by the applicable five (5) year statute of limitations, i.e., Section 516.120, Mo.Rev.Stat. (1939).[10]

8. The conveyance under the Warranty Deed by [Cherokee] to [plaintiff] was insufficient and did not transfer [Cherokee's] alleged cause of action to [plaintiff], which cause of action has been attempted to be asserted herein by [plaintiff]. The law in Missouri is undisputed that a Warranty Deed in standard form without any specific words of assignment is insufficient to assign a Grantor's chose in action to the Grantee. *Scott v. Ranch Roy–L, Inc.*, 182 S.W.3d 627, 632–633 (Mo.App. E.D., 2005).

9. Without an assignment from [Cherokee] of its cause of action or causes of action under the Real Estate Purchase Contract, Plaintiff is not in privity of contract with [defendant] under the Real Estate Purchase Contract. *City of Kansas City v. Milrey Development Co.*, 600 S.W.2d 660, 664 (Mo.App. W.D., 1980).

10. Plaintiff does not have the necessary standing required to bring the instant lawsuit to enforce any alleged breach of such contract committed by [defendant] since Missouri law requires that in order for a party to bring a lawsuit on a contract, that party must either be a party to the contract or in privity to the contract. *Owens v. Unified Investigations & Sciences, Inc.*, 166 S.W.3d 89, 92–93 (Mo.App. E.D., 2005); *City of Kansas City v. Milrey Development Co., supra.*; *Hause v. Business Men's Assurance Co. of America*, 275 S.W.2d 381, 383 (Mo.App. W.D., 1955); *Historic Hermann, Inc. v. Thuli*, 790 S.W.2d 931, 935–936 (Mo.App. E.D., 1990); *Brattin Ins. Agency, Inc., v. Triple S. Properties, Inc.*, 77 S.W.3d 687, 688 (Mo.App. S.D., 2002); and, *Hardcore Concrete, LLC v. Fortner Insurance Services, Inc.*, 220 S.W.3d 350, 358 (Mo. App. S.D., 2007).

Thus, the trial court found two bases for denying plaintiff's claim; first, that the statute of limitations had run at the time plaintiff's action was brought, and second,

---

**10.** The applicable revision of Missouri Revised Statutes at the time of the filing of this action was RSMo 1994. § 516.120 remains the same in the 1994 revision (and in the current revision) as it was in RSMo 1939.

that plaintiff, not having been a party to the contract which it asserted was breached, lacked standing to bring the action that is the subject of this appeal. Plaintiff asserts that the trial court erred in both determinations.

This case, having been tried before the trial judge without a jury, is reviewed by this court pursuant to Rule 84.13(d). The judgment will be affirmed "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law." *Stewart v. Jones,* 58 S.W.3d 926, 930 (Mo.App.2001).

Mindful that Rule 84.04(d)(1)(B) and (C) impose the requirement of brevity on aspects of points relied on, neither Point I nor Point II are models of compliance with that requirement. Rule 84.04(d)(1)(B) requires an appellant to "state *concisely* the legal reasons for the appellant's claim of reversible error." (Emphasis added.) Rule 84.04(d)(1)(C) requires that an appellant "explain in *summary fashion* why, in the context of the case, those legal reasons support the claim of reversible error." (Emphasis added.) Point I covers three pages in plaintiff's brief. It is interspersed with factual assertions. Point II is a two-page narration that makes various assertions, including what the contract in question "intended," as well as claims that defendant waived legal rights to contest the validity of an assignment. (Arguably this constitutes assertions of multifarious claims that violate Rule 84.04(d).) The rambling nature of the points on appeal make it difficult to understand the bases for the claims of error plaintiff asserts. The legal reasons given in support of the claims of error are unclear and the assertions that, in the context of the case, support plaintiff's legal rationale are imprecise.

Point I is directed to the trial court's determination that plaintiff's action is barred by the statute of limitations. As this court perceives Point I, plaintiff's claim is that the cause of action for the alleged breach of contract did not accrue until the competing fast food restaurant, McDonald's, had commenced operation; that this, rather than the failure to deliver a restriction in recordable form, was what occasioned damage to plaintiff as a "successor in interest" to Cherokee. Plaintiff makes a further claim that the breach of contract was for not protecting it, as Cherokee's successor in interest, for a twenty-year period in that this was an obligation imposed by the contract. On those premises, plaintiff contends the statute of limitations did not begin to run in 1992 at the closing of the real estate sale; that it had not run at the time plaintiff brought this action.

■ Point II contends the trial court erred in ruling that plaintiff lacked standing to assert the cause of action pleaded because plaintiff lacked privity of contract with defendant. Plaintiff claims that the contractual obligation to restrict the land defendant owned, in addition to that sold to Cherokee, was a contract right that plaintiff acquired from Cherokee. This court finds that Point II is determinative of plaintiff's appeal.

Defendant entered the following undated document into evidence as Plaintiff's Exhibit No. 19.

### ASSIGNMENT

[Cherokee], by and through its last officer, director and shareholder, whose signature appears below, pursuant to the provisions of Section 351.476 RSMo., hereby acknowledges that assignment of all right, title, interest claimed, ownership and rights to enforce all covenants, claims, causes of action or chose in ac-

tion, arising out of and relating to that certain real estate purchase contract executed by [Cherokee], as Buyer, and [defendant], as Seller, including all covenants, commitments, amendments and conveyances relating thereto, were previously, and are hereby formally acknowledged, as having been assigned to [plaintiff], as the assignee and in [sic] successor in interest to [Cherokee], which assignment was effective the 4th day of May, 1992, when formal conveyance of the real property arising out of the aforementioned contractual relationship was effected between [Cherokee] and [plaintiff].

This assignment relates to all property interest, including rights, claims, choses in action, and rights to proceed with suit to enforce all of the foregoing.

CHEROKEE INVESTMENTS, INC.

/s/ *Ron Ward*

Ron Ward, Last and Sole Officer, Director and Shareholder

## ACCEPTANCE OF ASSIGNMENT

[Plaintiff], by and through its undersigned representatives, hereby acknowledge [sic] and accepts the assignment of all right, title and interest in claims relating to that certain real estate purchase contract referenced in the assignment above, including rights to enforce all claims or choses in action, and which assignment was understood to have been previously received by [plaintiff] from [Cherokee] on or about the 4th day of May, 1992.

RGB2, INC.

/s/ *John R Lewis*

John Lewis, Shareholder and Authorized Representative

/s/ *Ron Ward*

Ron Ward, Shareholder and Authorized Representative

As this court understands plaintiff's argument, plaintiff claims that the conveyance of the real estate on which the Hardee's restaurant is located, Lot 3, Chestnut Plaza Phase I, by warranty deed dated May 4, 1992, from Cherokee, as grantor, to plaintiff, as grantee, included the assignment of any and all rights to enforce covenants, claims, causes of action, or choses in action that arose out of and related to the purchase of the Chestnut Plaza I property by Cherokee from defendant.

Ron Ward was asked the following questions at trial and gave the following responses.

Q. [By plaintiff's counsel] Let me show you what's been marked as Plaintiff's Exhibit No. 19. I'll ask you if you can identify that.

A. Yes.

Q. Was this an assignment which you executed at my request in order to document your understanding and belief regarding the conveyance of the interest of [plaintiff]—excuse me—of [Cherokee] to [plaintiff] and the rights under the purchase contract with [defendant]?

[A dialogue followed between the respective trial counsels and the trial court after which the inquiry continued.]

Q. Go ahead, Mr. Ward.

A. Yes, I signed it.

Q. Okay. And you signed this because of the complaint made in the last motion for summary judgment by the defendant, because of some lack of any further documentation of the relationship between the company you own known as [Cherokee] and the company which you are 50 percent shareholder in and president of known as [plaintiff]?

A. That's correct.

. . .

[By defendant's counsel] All right.

This assignment that you made, Exhibit 19, as I understand it, you've acknowledged, haven't you, that the assignment was made by warranty deed?

THE WITNESS: I—

[Defendant's Counsel]: May I approach the witness?

THE COURT: I have an extra.

THE WITNESS: Well, that's my copy, I believe.

To me the assignment says just what it says. I don't see it saying only the warranty deed.

. . .

[Defense Counsel]: Is it your testimony, then, that it was your intent—this conveyance was made on May 4th, 1992; is that correct?

THE WITNESS: Assignment was made—it's dated May the 4th, 19—

[Defense Counsel]: Is it your testimony today—

THE WITNESS: Now, just a minute. Let me understand your question.

This assignment was made on May the 4th of 1992. Is that what you are asking me?

[Defense Counsel]: Yes, is that your testimony?

THE WITNESS: I don't know when it was made. It says it was effective May the 4th of 1992. I don't know when it was made. I don't remember. I don't remember what day I signed it. It's not dated when I signed it.

[Defense Counsel]: That was the date of the warranty deed, was when you intended the conveyance or the assignment to be made; is that correct?

THE WITNESS: Yes, when I signed the warranty deed, I intended all the rights and conveyances to go to [plaintiff].

. . .

[Defense Counsel]: Did you have a specific intent at that time to transfer this cause of action?

THE WITNESS: At that time I didn't know this cause of action was going to exist.

[Defense Counsel]: So you didn't have a specific intent to transfer this cause of action at that time?

THE WITNESS: I think I've answered. I had an intent to transfer all the rights that [Cherokee] had. I can't foresee the future. All rights to me means all rights.

After continued inquiry regarding whether the cause of action was assigned, Mr. Ward answered the question of whether he had "an intent on May 4th, 1992, to convey this cause of action from [Cherokee] to [plaintiff]." Mr. Ward stated, "No, I guess I did not intend something I did not know."

The trial court found that the warranty deed by which Cherokee conveyed the property where the Hardee's restaurant is located was the only written document exchanged between Cherokee and plaintiff. It found that there was no other conveyance or assignment of rights or cause of action between the two corporations. It addressed the matter of Plaintiff's Exhibit No. 19, the document entitled "ASSIGNMENT," as follows.

On or about February 14, 2008, Plaintiff submitted the Affidavit of Ron Ward which attempted to incorporate a self-serving "Assignment" as part of the Objection and Response of Plaintiff [ ] to Third Motion for Summary Judgment of Defendant [ ]. This purported "Assignment" was admitted into evidence as Plaintiff's Exhibit 19. However, the Court finds that this alleged "Assignment" is nothing more than an acknowledgement that the only assignments that

have ever been executed, made and prepared between [plaintiff] and [Cherokee] are contained in the Warranty Deed admitted as Plaintiff's trial Exhibit 9.

The trial court further found that "[t]he only asset transferred by [Cherokee] to [plaintiff] by the Warranty Deed was 'Lot 3 in Chestnut Plaza Phase 1,' and no cause of action was transferred by such Warranty Deed."

■ The trial court's finding that the only asset transferred by Cherokee to plaintiff was the real estate described on the warranty deed, the document admitted in evidence as Plaintiff's Exhibit No. 9, is supported by substantial evidence and is not against the weight of the evidence. Plaintiff's Exhibit No. 9 is a standard form warranty deed as used in Missouri. The deed contains no special warranties or exceptions other than the words immediately following the usual habendum language that states, "EXCEPT FOR TAXES, BOTH GENERAL AND SPECIAL, NOT NOW DUE AND PAYABLE." A warranty deed that does not contain a specific assignment of rights personal to a grantor conveys nothing but the real estate described in that deed. *Scott v. Ranch Roy-L, Inc.*, 182 S.W.3d 627, 633 (Mo.App. 2005).

■ Plaintiff was not a party to the contract it asserts was breached by defendant. "In order to state a cause of action on a contract, one must be a party to that contract from which the action arises." *Brattin Ins. Agency, Inc. v. Triple S. Properties, Inc.*, 77 S.W.3d 687, 688 (Mo. App.2002); *McFarland v. O'Gorman*, 814 S.W.2d 692, 694 (Mo.App.1991). *City of Kansas City v. Milrey Development Co.*, 600 S.W.2d 660 (Mo.App.1980), addressed the issue of maintaining an action for breach of contract as follows:

In *City of St. Louis v. G.H. Wright Contracting Company*, 202 Mo. 451, 101 S.W. 6 (1907)[,] the court held that a stranger could not maintain an action for breach of contract. This same rule was announced by this court in *Haase v. Business Men's Assurance Company*, 275 S.W.2d 381, 383[1] (Mo.App.1955). In *Haase* the court quoted from 12 Am. Jur. § 273, p. 818, that "obligations arising out of a contract are due only to those with whom it is made; a contract cannot be enforced by a person who is not a party to it or in privity with it." To the same effect is 17A C.J.S. Contracts, § 518 pp. 940–945.

*Id.* at 664.

Point II is denied. Having found no error in the trial court's determination that plaintiff is without standing to maintain the action on appeal, Point I is moot. The judgment is affirmed.

LYNCH, C.J., and RAHMEYER, J., concur.